**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| RODNEY LEE JOHNSON, | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | Case No. _____ |
| v. | § | |
| | § | |
| U.S. STEEL TUBULAR PRODUCTS, | § | |
| INC., | § | |
| *Defendant*. | § | |

**PLAINTIFF RODNEY LEE JOHNSON'S ORIGINAL COMPLAINT**

Plaintiff Rodney Lee Johnson complains of Defendant U.S. Steel Tubular Products, Inc. as follows:

**This is an Employment Discrimination/Retaliation Case**

1.      Johnson is engaged to and lives with a coworker named Ms. Debbie Hemmitt. Johnson also suffers from certain health problems – *e.g.,* diabetes and high blood pressure.

2.      This case arises from the following **four (4)** events.

A.      *First*, Johnson's live-in fiancé engaged in legally-protected opposition.

B.      *Second*, Johnson took time off from work by reason of his health problems and treatment for those health problems.

C.      *Third*, Defendant falsely accused Johnson of providing Defendant with medical documents that were forged, faked, tampered with, *etc.*

D.      *Fourth*, acting under the guise of the reason set forth in subpart "C," as well as by reason of Johnson's inherently close personal relationship with his live-in fiancé, Defendant suspended Johnson without pay, and a few days later it fired Johnson.

3.      Defendant later offered Johnson reinstatement, and Johnson accepted Defendant's offer. Thus, as of the filing of this lawsuit, Johnson remains actively employed with Defendant.

4.      However, Defendant has never deigned to compensate Johnson for the economic and mental/emotional harm that it inflicted – intentionally, willfully, and maliciously – by suspending and then firing Johnson.

5.      As a result, Johnson brings five (5) claims under federal and state law. They are:

A.      *Count One*. US Steel violated Title VII of the Civil Rights Act of 1964 ("Title VII"), when it suspended Johnson, suspended Johnson without pay, and fired Johnson.

B.      *Count Two*.  US Steel violated the Family and Medical Leave Act of 1993 ("FMLA"), when it suspended Johnson, suspended Johnson without pay, and fired Johnson.

C.      *Count Three*.  US Steel violated the Americans with Disabilities Act ("ADA") on the basis of one or more actual disabilities when it suspended Johnson, suspended Johnson without pay, and fired Johnson.

D.      *Count Four*. US Steel violated the Texas state counterpart to the anti-retaliation provision in Title VII – this counterpart is found in Chapter 21 of the Texas Labor Code -- when it suspended Johnson, suspended Johnson without pay, and fired Johnson.

E.      *Count Five*. US Steel violated the Texas state counterpart to the anti-discrimination provision in the ADA -- this counterpart is found in Chapter 21 of the Texas Labor Code -- when it suspended Johnson, suspended Johnson without pay, and fired Johnson.

**Parties**

6.      Rodney Lee Johnson, plaintiff, is an individual who resides in Titus County, Texas. Johnson currently resides Titus County, Texas, and he has resided in Titus County, Texas,

at all times material to this action.

7.      U.S. Steel Tubular Products, Inc. ("US Steel" or "Company") is an active Delaware corporation. US Steel may be served with process by serving its registered agent, which is **National Registered Agents, Inc., 1999 Bryan Street, Suite 900, Dallas, Texas 75201.**

8.      US Steel prepared, or had prepared, on Johnson an IRS Form W2 for Year 2012. That W2 identifies Johnson's employer as US Steel. Thus, during the time covered by that W2 Johnson was an "employee" of US Steel --

      A.      as that term is defined in 42 U.S.C. §2000e-(f).

      B.      as that term is defined in 42 U.S.C. §12111(4).

      C.      as that term is defined in TEX. LAB. CODE §21.002(7).

9.      US Steel prepared, or had prepared, on Johnson an IRS Form W2 for that portion of Year 2013 when Johnson was employed there. That W2 identifies Johnson's employer as US Steel. Thus, during the time covered by that W2 Johnson was an "employee" of US Steel –

      A.      as that term is defined in 42 U.S.C. §2000e-(f).

      B.      as that term is defined in 42 U.S.C. §12111(4).

      C.      as that term is defined in TEX. LAB. CODE §21.002(7).

10.      US Steel prepared, or had prepared, on Johnson an IRS Form W2 for Year 2012. Thus, during the time covered by that W2 US Steel was an "employer" of Johnson –

      A.      as that term is defined in 42 U.S.C. §2000e-(b).

      B.      as that term is defined in 42 U.S.C. §12111(5).

      C.      as that term is defined in FMLA. 29 U.S.C. §2611(4)(A)(i),

D.      as that term is defined in TEX. LAB. CODE §21.002(8).

11.     US Steel prepared, or had prepared, on Johnson an IRS Form W2 for that portion of Year 2013 when Johnson was employed there. Thus, during the time covered by that W2 US Steel was an "employer" of Johnson –

A.      as that term is defined in 42 U.S.C. §2000e-(b).

B.      as that term is defined in 42 U.S.C. §12111(5).

C.      as that term is defined in FMLA. 29 U.S.C. §2611(4)(A)(i),

D.      as that term is defined in TEX. LAB. CODE §21.002(8).

**Jurisdiction**

12.     This Court has subject-matter jurisdiction over this lawsuit by reason of 28 U.S.C. §1331 (federal question). This Court's subject-matter jurisdiction extends to the two claims that Johnson has brought pursuant to Texas state law. *See* 28 U.S.C. §1367 (supplemental jurisdiction).

13.     This Court has *in personam* jurisdiction, both specific and general, over US Steel because US Steel does business in Texas, and because Johnson's claims arose in Texas.

**Venue**

14.     Venue is proper in this district and division because a substantial part of the events forming the basis of Johnson's claims occurred there – specifically, at a facility operated by US Steel located in Hughes Springs, Cass County, Texas. 28 U.S.C. §1391(b)(2).

**Material Facts**

15.     US Steel first employed Johnson in Year 2004.

16.     US Steel first employed Johnson in November of 2004.

17.     US Steel laid off Johnson in Year 2008.

18.     US Steel recalled Johnson back from layoff.

19.     US Steel recalled Johnson back from layoff in Year 2008.

20.     When US Steel recalled Johnson back from layoff, it gave Johnson a physical examination.

21.     When US Steel recalled Johnson back from layoff, it gave Johnson a physical examination, after which US Steel advised Johnson that Johnson's blood pressure was too high.

22.     Throughout all of calendar year 2009, US Steel assigned Johnson to work at its facility located at 3681 FM 260, Hughes Springs, Cass County, Texas 75656.

23.     Johnson worked more than 1,250 hours for US Steel during calendar year 2009.

24.     Throughout all of calendar year 2009, US Steel employed more than 50 individuals at its facility located at 3681 FM 260, Hughes Springs, Cass County, Texas 75656.

25.     Throughout all of calendar year 2010, US Steel assigned Johnson to work at its facility located at 3681 FM 260, Hughes Springs, Cass County, Texas 75656.

26.     Johnson worked more than 1,250 hours for US Steel during calendar year 2010.

27.     Throughout all of calendar year 2010, US Steel employed more than 50 individuals at its facility located at 3681 FM 260, Hughes Springs, Cass County, Texas 75656.

28.     Throughout all of calendar year 2011, US Steel assigned Johnson to work at its facility located at 3681 FM 260, Hughes Springs, Cass County, Texas 75656.

29.     Johnson worked more than 1,250 hours for US Steel during calendar year 2011.

30.     Throughout all of calendar year 2011, US Steel employed more than 50 individuals at its facility located at 3681 FM 260, Hughes Springs, Cass County, Texas 75656.

31.     One time in Year 2011, US Steel sent Johnson home from work.

32.     One time in Year 2011, US Steel sent Johnson home from work after giving Johnson a physical examination.

33.     One time in Year 2011, US Steel sent Johnson home from work after giving Johnson a physical because, said US Steel, Johnson's blood pressure was too high.

34.     US Steel had Johnson on its payroll through all of calendar year 2012.

35.     US Steel employed Johnson as a "Cutter Operator" throughout all of calendar year 2012.

36.     Throughout all of calendar year 2012, US Steel assigned Johnson to work at its facility located at 3681 FM 260, Hughes Springs, Cass County, Texas 75656.

37.     Johnson worked more than 1,250 hours for US Steel during calendar year 2012.

38.     Throughout all of calendar year 2012, US Steel employed more than 50 individuals at its facility located at 3681 FM 260, Hughes Springs, Cass County, Texas 75656.

39.     US Steel had Johnson on its payroll throughout calendar year 2013 until the day when it discharged him during that same calendar year.

40.     US Steel employed Johnson as a "Cutter Operator" throughout calendar year 2013 until the day when it discharged him during that same calendar year.

41.     US Steel assigned Johnson to work at its facility located at 3681 FM 260, Hughes Springs, Cass County, Texas 75656 throughout calendar year 2013 until the day when it discharged him during that same calendar year.

42.     Johnson worked more than 1,250 hours for US Steel during calendar year 2013.

43.     Throughout all of calendar year 2013, US Steel employed more than 50

individuals at its facility located at 3681 FM 260, Hughes Springs, Cass County, Texas 75656.

44.     From Year 2009 through its discharge of Johnson, US Steel assigned the following employee number to Johnson – 37198.

45.     According to US Steel records, Johnson has the same home address as Ms. Debbie Hemmitt.

46.     Ms. Hemmitt was on the payroll of US Steel at all times in March 2013.

47.     According to US Steel records, Johnson has had the same home address as Ms. Debbie Hemmitt at all times from March 1, 2013 to the filing of this lawsuit.

48.     Management at US Steel is aware that Hemmitt and Johnson live together.

49.     Mr. Chris Fontenot is aware that Johnson refers to Ms. Debbie Hemmitt as his fiancé.

50.     Mr. Chris Fontenot has been aware from March 1, 2013 to the filing of this lawsuit that Johnson refers to Ms. Debbie Hemmitt as his fiancé.

51.     Ms. Billie Simpson is aware that Johnson refers to Ms. Debbie Hemmitt as his fiancé.

52.     Mr. Billie Simpson has been aware from March 1, 2013 to the filing of this lawsuit that Johnson refers to Ms. Debbie Hemmitt as his fiancé.

53.     Mr. Eddie Jones is aware that Johnson refers to Ms. Debbie Hemmitt as his fiancé.

54.     Mr. Mr. Eddie Jones has been aware from March 1, 2013 to the filing of this lawsuit that Johnson refers to Ms. Debbie Hemmitt as his fiancé.

55.     Management at US Steel is aware that Johnson refers to Ms. Debbie Hemmitt as

his fiancé.

56.     Management at US Steel has been aware from March 1, 2013 to the filing of this lawsuit that Johnson refers to Ms. Debbie Hemmitt as his fiancé.

57.     Management at US Steel is aware that Hemmitt and Johnson live together.

58.     In March 2013, while she was on US Steel's payroll, Ms. Debbie Hemmitt complained to a management official at US Steel named Brian Wood about the Company's treatment of female employees – for example, the lack of women in higher paying positions.

59.     Between June 1, 2013 and October 31, 2013, US Steel had actual knowledge that Johnson suffered from diabetes.

60.     Between June 1, 2013 and October 31, 2013, US Steel had constructive knowledge that Johnson suffered from diabetes.

61.     Between June 1, 2013 and October 31, 2013, US Steel had actual knowledge that Johnson suffered from high blood pressure.

62.     Between June 1, 2013 and October 31, 2013, US Steel had constructive knowledge that Johnson suffered from high blood pressure.

63.     Between June 1, 2013 and October 31, 2013, Johnson's immediate supervisor was a certain Mr. Chris Fontenot.

64.     On June 21, 2013, Johnson was absent from his scheduled shift at US Steel.

65.     On June 21, 2013, Johnson was absent from his scheduled shift at US Steel due to problems Johnson was having with high blood pressure.

66.     On June 22, 2013, Johnson was absent from his scheduled shift at US. Steel.

67.     On June 22, 2013, Johnson was absent from his scheduled shift at US Steel due to

problems Johnson was having with high blood pressure.

68.     On or about June 23, 2013, Johnson went to the emergency room of East Texas Medical Center in Pittsburg, Texas ("ETMC").

69.     On or about June 23, 2013, Johnson went to the emergency room of ETMC. There, a registered nurse named Connie Roth took Johnson's blood pressure, after which Roth gave Johnson a hand-written note ("First Note").

70.     Johnson then left ETMC, went to work at US Steel, and gave the First Note to Fontenot.

71.     Johnson gave the First Note to Fontenot on the same day as when Johnson received the First Note from Roth.

72.     On the following day, Fontenot told Johnson that US Steel does not accept hand written notes.

73.     After Fontenot's statement referenced in paragraph 72, Johnson went back to ETMC and obtained another note, which shall hereinafter be referred to as the "Second Note."

74.     After Fontenot's statement referenced in paragraph 72, Johnson went back to ETMC and obtained the Second Note, which Johnson obtained from a registered nurse at ETMC named Jose Tarantino.

75.     After Fontenot's statement referenced in paragraph 72, Johnson went back to ETMC and obtained Second Note, which Johnson obtained from a registered nurse at ETMC named Jose Tarantino, and which unlike the First Note had ETMC letterhead on it.

76.     Johnson tendered the Second Note to Fontenot.

77.     Johnson tendered the Second Note to Fontenot within three days or less after

Johnson's receipt of same.

78.     US Steel has created a business record, dated June 24, 2013 and titled *Notification of Discipline,* in which US Steel states that it disciplined Johnson as follows -- "5-day suspension."

79.     Some time after learning of his 5-day suspension, Johnson saw his primary care physician.

80.     Some time after learning of his 5-day suspension, Johnson saw his primary care physician, Dr. Christopher Burling.

81.     Some time after learning of his 5-day suspension, Johnson saw his primary care physician, Dr. Christopher Burling, who at the time officed in Mount Pleasant.

82.     Some time after learning of his 5-day suspension, Johnson saw his primary care physician, Dr. Christopher Burling, who at the time officed in Mount Pleasant. During this visit, Dr. Burling prepared a note for Johnson, which shall hereinafter be referenced as the "Third Note."

83.     Johnson tendered the Third Note to Fontenot.

84.     In September 2013, Johnson missed one week of work due to a medical condition – specifically, neuropathy in his foot.

85.     On September 24, 2013, Johnson met with a Human Resources Representative named Ms. Billie Simpson.

86.     On September 24, 2013, Johnson met with a Human Resources Representative named Ms. Billie Simpson, during which time Simpson told Johnson about US Steel's belief that the notes Johnson had previously given to US Steel had been "doctored." Simpson used the word

"doctored" to Johnson.

87.    On September 24, 2013, Johnson met with a Human Resources Representative named Billie Simpson, during which time Simpson told Johnson about US Steel's belief that the notes Johnson had previously given to US Steel had been "doctored." Simpson used the word "doctored" to Johnson. During this same meeting Simpson accused Johnson of forging and falsifying those medical notes. Simpson actually used the words "forged" and "falsified" while talking to Johnson.

88.    Less than nine days after Johnson's meeting with Simpson, US Steel turned off Johnson's badge.

89.    Simpson ordered Johnson to report to US Steel's Human Resources Department.

90.    After meeting with Simpson, US Steel ordered Johnson to report to US Steel's Human Resources Department.

91.    Johnson reported to US Steel's Human Resources Department on or about October 4, 2013.

92.    Johnson reported to US Steel's Human Resources Department on or about October 4, 2013, when he met face-to-face with a certain Mr. Eddie Jones.

93.    Johnson reported to US Steel's Human Resources Department on or about October 4, 2013, when he met face-to-face with a certain Mr. Eddie Jones (hereinafter "Jones"), at which time Jones told Johnson that US Steel had "a problem with" the First Note.

94.    Johnson reported to US Steel's Human Resources Department on or about October 4, 2013, when he met face-to-face with Jones, at which time Jones told Johnson that US Steel had "a problem with" the First Note, and at which time Jones also told Johnson that he,

Jones, believed that the First Note was "fake" and had been "tampered with."

95.   On October 4, 2013, US Steel suspended Johnson.

96.   On October 4, 2013, US Steel suspended Johnson without pay.

97.   US Steel, by and through Jones, advised Johnson that Johnson was suspended.

98.   US Steel, by and through Jones, advised Johnson that Johnson was suspended without pay.

99.   US Steel suspended Johnson without pay – pending, Jones told Johnson, an "investigation" by the Company.

100.   It was Jones, and only Jones, who, on behalf of US Steel, made the decision to suspend Johnson.

101.   It was Jones, and only Jones, who, on behalf of US Steel, made the decision to suspend Johnson without pay.

102.   It was Jones who, on behalf of US Steel, made the final, ultimate decision to suspend Johnson.

103.   It was Jones who, on behalf of US Steel, made the final, ultimate decision to suspend Johnson without pay.

104.   Johnson received a letter from ETMC dated October 9, 2013.

105.   Johnson received a letter from ETMC dated October 9, 2013 from a certain Noel Tuazon, RN, BSN, Emergency Room Director.

106.   Johnson received a letter from ETMC dated October 9, 2013 from a certain Noel Tuazon, RN, BSN, Emergency Room Director, which was addressed to Johnson

107.   Johnson received a letter from ETMC dated October 9, 2013 from a certain Noel

Tuazon, RN, BSN, Emergency Room Director, which was addressed to Johnson, and which reads in pertinent part as follows:

> *This is to confirm that you presented to the East Texas Medical Center – Pittsburg Emergency Room on June 23, 2013 but were never registered as a patient (requests for blood pressure checks do not meet criteria for registration and admission to the ER).*
>
> *East Texas Medical Center – Pittsburg ER provided you with a courtesy blood pressure check. The values recorded for you blood pressure were [REDACTED], pulse rate [REDACTED].*

108.    Johnson tendered the letter referenced in paragraph 107 to US Steel.

109.    Johnson tendered the letter referenced in paragraph 107 to US Steel before October 10, 2013.

110.    Johnson tendered the letter referenced in paragraph 107 to US Steel after October 9, 2013 but before October 15, 2013.

111.    US Steel has created a business record, dated October 10, 2013 and titled *Notification of Discipline,* in which US States that it disciplined Johnson as follows -- "discharge."

112.    US Steel has created a business record, dated October 10, 2013 and titled *Notification of Discipline,* in which US Steel states that it discharged Johnson for the following "offense" – "Providing false information to the Company."

113.    US Steel has created a business record, dated October 10, 2013 and titled *Notification of Discipline,* in which US Steel states that it discharged Johnson for the following "offense" – "Providing misleading information regarding medical treatment."

114.    US Steel fired Johnson.

115.    US Steel fired Johnson effective October 10, 2013.

116.    US Steel, by and through Jones, advised Johnson that he, Johnson, was fired.

117.    US Steel, by and through Jones, advised Johnson that he, Johnson, was fired effective October 10, 2013.

118.    On October 10, 2013, US Steel, by and through Jones, asked Johnson if Johnson had retained an attorney.

119.    It was Jones, and only Jones, who, on behalf of US Steel, made the decision to fire Johnson.

120.    It was Jones who, on behalf of US Steel, made the final, ultimate decision to fire Johnson.

121.    Following his discharge from US Steel, Johnson completed and signed a charge of discrimination with the Texas Workforce Commission Civil Rights Division ("TWCCRD").

122.    Following his discharge from US Steel, Johnson completed and signed a charge of discrimination with the TWCCRD in which Johnson accused US Steel of suspending and then firing him because of an actual disability in violation of both Chapter 21 of the Texas Labor Code and the ADA.

123.    Johnson completed and signed a charge of discrimination with the TWCCRD, which the TWCCRD received on October 16, 2013.

124.    Johnson completed and signed a charge of discrimination with the TWCCRD, which the TWCCRD received on October 16, 2013. Soon afterward, the TWCCRD assigned the following numbers to that same charge of discrimination – 1A14060 and 31C-2014-00022.

125.    On or about December 6, 2013, Johnson completed and faxed an *Employment Discrimination Complaint Form* to the TWCCRD.

126.     On or about December 6, 2013, Johnson completed and faxed an *Employment Discrimination Complaint Form* to the TWCCRD in which Johnson complained about discrimination based on an actual disability.

127.     On December 12, 2013, Johnson signed an amended charge of discrimination

128.     On December 12, 2013, Johnson signed an amended charge of discrimination in which he not only reiterated his complaint about discrimination based on actual disability, Johnson also added a claim of retaliation in violation of Title VII relating to his fiancé, Ms. Debbie Hemmitt.

129.     On December 16, 2013, Johnson, by and through the undersigned counsel, mailed the amended charge referenced in the previous paragraph to the TWCCRD.

130.     On January 6, 2014, the TWCCRD mailed to the undersigned counsel an amended version of charge numbers 1A14060 and 31C-2014-00022.

131.     On January 8, 2014, the undersigned counsel received the letter dated January 6, 20914 from TWCCRD containing the amended version of charge numbers 1A14060 and 31C-2014-00022.

132.     On April 30, 2014, the TWCCRD signed a form titled *Dismissal and Notice of Right to File a Civil Action.*

133.     On May 20, 2014, Johnson, by and through the undersigned counsel, mailed a written request to the U.S. Equal Employment Opportunity Commission ("EEOC") for a right-to-sue letter from that federal agency.

134.     On May 23, 2014, EEOC signed a form titled *Notice of Right to Sue (Issued on Request).*

135.    Johnson, by and through his counsel, received the document referenced in paragraph 134 on May 27, 2014.

136.    US Steel offered Johnson reinstatement.

137.    Johnson responded to the offer referenced in paragraph 136 by advising US Steel that he accepts reinstatement.

138.    Johnson went back to work at US Steel, where he remains employed to this day.

139.    US Steel has not paid Johnson for the time when US Steel suspended him without pay.

140.    US Steel has not paid Johnson for the time when Johnson was not on US Steel's payroll.

141.    As a result of the foregoing conduct by US Steel, Johnson has sustained substantial financial losses, and he is continuing to sustain such losses.

142.    As a result of the foregoing conduct by US Steel, Johnson has suffered severe mental anguish, and he is continuing to suffer such anguish.

### Count One – Title VII -- Retaliation

143.    Johnson re-alleges and incorporates by reference all allegations set forth in paragraphs 1 through 142.

144.    US Steel violated Section 704(a) of Title VII, which is codified at 42 U.S.C. §2000e-3(a), when it suspended Johnson.

145.    US Steel violated Section 704(a) of Title VII, which is codified at 42 U.S.C. §2000e-3(a), when it suspended Johnson without pay.

146.    US Steel violated Section 704(a) of Title VII, which is codified at 42 U.S.C.

§2000e-3(a), when it fired Johnson.

147.    Ms. Debbie Hemmitt is a "close family member" of Johnson as the Supreme Court used that phrase in *Thompson v. North American Stainless, LP*, 131 S. Ct. 863, 868 (2011).

148.    Hemmitt engaged in protected opposition in March 2013.

149.    Hemmitt engaged in protected opposition in March 2013 when she complained to a management official at US Steel named Brian Wood about US Steel's treatment of female employees – for example, the lack of women in higher paying positions.

150.    Following the time of Hemmitt's complaint to Wood referenced in paragraph 149, US Steel suspended Johnson.

A.    US Steel's decision to suspend Johnson constitutes a "materially adverse" employment action as the Supreme Court used that phrase in *Burlington Northern & Santa Fe Railway v. White*, 548 U.S. 53, 68 (2006).

151.    Following the time of Hemmitt's complaint to Wood referenced in paragraph 149, US Steel suspended Johnson without pay.

A.    US Steel's decision to suspend Johnson without pay constitutes a "materially adverse" employment action as the Supreme Court used that phrase in *Burlington Northern & Santa Fe Railway v. White*, 548 U.S. 53, 68 (2006).

152.    Following the time of Hemmitt's complaint to Wood referenced in paragraph 149, US Steel fired Johnson.

A.    US Steel's decision to fire Johnson constitutes a "materially adverse" employment action as the Supreme Court used that phrase in *Burlington Northern & Santa Fe Railway v. White*, 548 U.S. 53, 68 (2006).

153.    Johnson has satisfied all conditions precedent to the filing of Count One.

154.    By reason of US Steel's violation of Title VII, Johnson is entitled to receive an award of wages and employment benefits in the past -- back pay – plus wages and employment benefits in the future – front pay -- and other appropriate equitable relief. 42 USC 2000e-§5(g)(1).

155.    By reason of US Steel's violation of Title VII, Johnson is entitled to recover compensatory damages in the past, which includes damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non pecuniary losses, as well as compensatory damages in the future, which includes damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non pecuniary losses. 42 USC §1981a(a)(1).

156.    Because US Steel engaged in such discriminatory practices with malice or with reckless indifference to Johnson's federally-protected rights, Johnson is entitled to an award of punitive damages against US Steel. 42 USC §1981a(a)(1).

157.    Johnson seeks recovery of all interest that is lawfully available to him.

158.    As the prevailing party, Johnson is entitled to an award of attorney fees pursuant to 42 U.S.C §2000e-5(k). Johnson also requests, pursuant to 42 U.S.C §2000e-5(k), reimbursement for expert witness fees as part of his costs.

### Count Two – FMLA Discrimination/Retaliation

159.    Johnson re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 142.

160.    Johnson was an "eligible employee" as that phrase is used in 29 U.S.C. §2611(2)

at all times from June 20, 2013 through October 10, 2013.

161.    The "discrimination/retaliation" provision of the FMLA states, "*It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter*." 29 U.S.C. §2615(a)(2).

162.    US Steel violated the FMLA – specifically, 29 U.S.C. §2615(a)(2) and the U.S. Department of Labor regulations promulgated thereunder -- as follows:

> A.    Johnson engaged in activity that is protected by the FMLA – namely, he took time off, including intermittent time off, to see health care provider(s), as well as time off as part of his treatment.

> B.    Shortly after the protected activity described in subpart A, US Steel committed three employment actions that were "materially adverse" as the Supreme Court used that phrase in *Burlington Northern & Santa Fe Railway v. White*, 548 U.S. 53, 68 (2006). First, US Steel suspended Johnson. Second, US Steel suspended Johnson without pay. Third, US Steel fired Johnson.

> C.    There is a causal link between subparts A and B.

163.    Johnson was prejudiced by US Steel's conduct. 29 U.S.C. §2617. Accordingly, Johnson is entitled to relief in the form of lost wages, salary, employment benefits, or other compensation denied or lost by reason of US Steel's violations of the FMLA.

164.    US Steel's violation of the FMLA was willful. Thus, Johnson is also entitled to an award of liquidated damages.

165.    Myers is entitled to recover reasonable attorney fees and costs.

166.    Myers is entitled to such other relief as may be appropriate, including pre-judgment and post-judgment interest.

**Count Three -- ADA Discrimination -- Actual Disability**

167.    Johnson re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 142.

168.    As an employer, US Steel is subject to the ADA, including the ADA as amended by the ADA Amendments Act of 2008.

169.    The ADA reads in pertinent part as follows: "*No covered entity shall discriminate against a qualified individual on the basis of disability . . . in regard to [any] . . . terms, conditions, and privileges of employment.*" US Steel violated this provision in three different ways – first, when it suspended Johnson; second, when it suspended Johnson without pay; and third, when it fired Johnson.

170.    Johnson suffered from diabetes at all times from January 1, 2012 through October 10, 2013.

171.    Johnson's diabetes, referenced in paragraph 170, constitutes a "physical impairment" as that phrase is used in 42 U.S.C. §12102(1)(A) and defined in 29 C.F.R. §1630.2(h)(1).

172.    Johnson's diabetes, referenced in paragraph 170, substantially limits one or more of Johnson's "major life activities" as that phrase is used in 42 U.S.C. §12102(1)(A) and defined in 29 C.F.R. §1630.2(i).

173.    Johnson suffered from high blood pressure at all times from January 1, 2012 through October 10, 2013.

174.     Johnson's high blood pressure, referenced in paragraph 173, constitutes a "physical impairment" as that phrase is used in 42 U.S.C. §12102(1)(A) and defined in 29 C.F.R. §1630.2(h)(1).

175.     Johnson's high blood pressure, referenced in paragraph 173, substantially limits one or more of Johnson's "major life activities" as that phrase is used in 42 U.S.C. §12102(1)(A) and defined in 29 C.F.R. §1630.2(i).

176.     Between June 1, 2013 and October 10, 2013, Johnson suffered from one or more actual "disabilities" as that word is defined in 42 U.S.C. §12102(1).

177.     At all times between June 1, 2013 and October 10, 2013, Johnson was an individual who was "qualified," as that word is used in 42 U.S.C. §12111(8) and defined in 29 C.F.R. §1630.2(m), for the position of "Cutter Operator" at the US Steel facility located at 3681 FM 260, Hughes Springs, Cass County, Texas 75656.

178.     Johnson was subjected to an adverse employment action in the second half of Year 2013 when US Steel suspended him.

179.     Johnson was subjected to an adverse employment action in the second half of Year 2013 when US Steel suspended him without pay.

180.     Johnson was subjected to an adverse employment action in October 2013 when US Steel fired him.

181.     After suspending Johnson, US Steel replaced Johnson with a non-disabled employee.

182.     After suspending Johnson without pay, US Steel replaced Johnson with a non-disabled employee.

183.    After firing Johnson, US Steel replaced Johnson with a non-disabled employee.

184.    In Year 2013, US Steel treated Johnson less favorably than it treated its non-disabled employees.

185.    Johnson has satisfied all conditions precedent to the filing of Count Three.

186.    By reason of US Steel's violation of the ADA, Johnson is entitled to receive an award of wages and employment benefits in the past -- back pay – plus wages and employment benefits in the future – front pay -- and other appropriate equitable relief.

187.    By reason of US Steel's violation of the ADA, Johnson is entitled to recover compensatory damages in the past, which includes damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non pecuniary losses, as well as compensatory damages in the future, which includes damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non pecuniary losses.

188.    Because US Steel engaged in such discriminatory practices with malice or with reckless indifference to Johnson's federally-protected rights, Johnson is entitled to an award of punitive damages against US Steel.

189.    Johnson seeks recovery of all interest that is lawfully available to him.

190.    As the prevailing party, Johnson is entitled to an award of attorney fees. Johnson also requests reimbursement for expert witness fees as part of his costs.

### Count Four – Chapter 21 of the Texas Labor Code -- Retaliation

191.    Johnson re-alleges and incorporates by reference all allegations set forth in paragraphs 1 through 142.

192.    Section 21.001(1) of the Texas Labor Code states that the "general purpose[]" of Chapter 21 of the Texas Labor Code, at least in part, is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964[.]"

193.    Johnson brings a claim for retaliation in violation of Chapter 21 of the Texas Labor Code. Johnson incorporates into this Count Four all of the allegations previously plead in Count One, *supra*, as if fully set forth herein.

**Count Five – Chapter 21 of the Texas Labor Code**
**Discrimination – Actual Disability**

194.    Johnson re-alleges and incorporates by reference all allegations set forth in paragraphs 1 through 142.

195.    Section 21.001(2) of the Texas Labor Code states that the "general purpose[]" of Chapter 21 of the Texas Labor Code, at least in part, is to "provide for the execution of the policies embodied in Title I of the Americans with Disabilities Act of 1990 and its subsequent amendments[.]"

196.    Johnson brings a claim for discrimination on the basis of an actual disability in violation of Chapter 21 of the Texas Labor Code. Johnson incorporates into this Count Five all of the allegations previously plead in Count Three, *supra*, as if fully set forth herein.

**Request for Relief**

Based on the foregoing, Plaintiff Rodney Johnson asks that Defendant U.S. Steel Tubular Products, Inc. appear and answer, that Johnson have final judgment against Defendant as set forth herein, and for all such other and further relief to which Johnson may be justly entitled.

Dated June 30, 2014

Respectfully submitted,

/s/

By: _____

        **Wade A. Forsman**
        *Lead Attorney*
        State Bar No. 07264257
        P.O. Box 918
        Sulphur Springs, TX 75483-0918
        903.689.4144 Telephone-East Texas
        972.499.4004 Telephone–Dallas/Fort Worth
        903.689.7001 Facsimile
        **wade@forsmanlaw.com**

**Attorney for Plaintiff Rodney Lee Johnson**